**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|   |   |
|---|---|
| United States of America, | CR 09-8004-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. |   |
| Diane Steiniger, |   |
| Defendant. |   |

Currently pending before this Court is Defendant Diane Steiniger's Motion for Bail Pending Appeal to the Ninth Circuit, (Doc. 240), and Emergency Motion for Automatic Stay of Surrender Date Pursuant to 9th Circuit Rule 9-1-2(e). (Doc. 241). Having carefully reviewed the Parties' pleadings and determined that oral argument is unnecessary, the Court issues the following Order:

**I.   PROCEDURAL HISTORY**

On January 15, 2009, a Grand Jury indicted Defendants William and Diane Steiniger for multiple counts of Attempt to Evade and Defeat Assessment of Taxes under 26 U.S.C § 7201, and one count each of Conspiracy to Defraud the United States by Impeding and Impairing the I.R.S. under 18 U.S.C. § 1371. (Doc. 3). A jury trial was held from December 9, 2009, to December 11, 2009. The jury found Defendants guilty as to all counts. (Doc. 160). The Court sentenced Defendants on February 22, 2011. (Doc. 219). On all counts, the Court sentenced Defendant Diane Steiniger ("Defendant") to eight months in

prison and three years of supervised release to run concurrently. (Id.). The Court also issued a surrender date of April 4, 2011. (Id.).

On May 31, 2011, Defendant filed the instant Motion for Bail Pending Appeal to the Ninth Circuit, (Doc. 240), and Emergency Motion for Automatic Stay of Surrender Date Pursuant to 9th Circuit Rule 9-1-2(e). (Doc. 241). On April 1, 2011, this Court issued an Order directing the Government to respond to Defendant's Motion for Bail Pending Appeal to the Ninth Circuit, and granted a two-week stay of Defendant's surrender date. (Doc. 245). The Government filed its response brief on April 8, 2011. (Doc. 247).

## II.     MOTION FOR BAIL PENDING APPEAL

Bail pending appeal is governed by the Bail Reform Act of 1984. 18 U.S.C. 3143. The Act provides that a defendant who has been convicted and sentenced for a crime shall be detained pending appeal, unless certain criteria are met. In order to receive bail pending appeal, a defendant must prove by clear and convincing evidence:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985). In this test, "the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." Id. at 1281. A substantial question or law or fact is one that is "fairly debatable," or "fairly doubtful." Id. at 1283. That is to say, a substantial question is "one of more substance than would be necessary to a finding that it was not frivolous." Id.

Defendant identifies two issues she believes raise a substantial question of law: (1) whether Defendant's waiver of her right to counsel was made knowingly and intelligently; and (2) whether the Court erred when it denied Defendant's request for a continuance at the November 16, 2009, final pretrial conference.

/ / /

**1.     Waiver of Right to Counsel**

Defendant argues that whether her waiver of her right to counsel was made knowingly and intelligently raises a substantial issue of law.

**A.     Factual Background**

On October 23, 2009, Defendant filed notice with this Court of her intention to terminate her counsel. (Doc. 105). On October 28, 2009, the Court held a hearing concerning Defendant's notice of withdrawal. (Doc. 143). At the outset of the hearing, Defendant evaded the Court's questions and was generally unresponsive. For example, Defendant, reading off of index cards, initially refused to cross the bar and refused to acknowledge that she was a criminal defendant, insisting she was present in court only as the "third-party intervenor for Diane Steiniger." (Doc. 143, Tr. 10/28/09 13:2–18:23). Only after being warned that she would be held in contempt of court did Defendant concede that she was in fact Diane Steiniger and that she was a defendant in a criminal action. (Id. at 18:22). After establishing that Defendant accepted her circumstances, the Court turned its attention to the withdrawal request.

The Court discussed with Defendant the charges against her and the possible penalties associated with those charges. (Id. at 25:10–26:7). In light of those charges, the pending trial to resolve them, and Defendant's request to terminate her current counsel, the Court informed Defendant that she must decide whether to proceed by hiring new counsel or by representing herself. (Id. at 27:6–9). In response, Defendant informed the Court that "I am – the defendant will not be hiring another attorney." (Id. at 27:10-11). The Court proceeded to question Defendant about her education. Id. at 27:20–28:20. Defendant indicated that she had received an undergraduate degree from Hampshire College in Eastern Comparative Studies and a master's degree in Computer Science from Cleveland State University. (Id.). Defendant also stated that she was not a lawyer. (Id. 27:20–21). The Court noted that Defendant seemed "highly educated" and was "probably very bright to have received those degrees . . . ." (Id. at 28:15–17). The Court, however, also emphasized that Defendant's lack of a law degree would put her "at a distinct disadvantage for purposes of any court

1  proceeding or hearing and in representing [herself] in this case, especially at trial." (Id. at

2  28:17–20). Then, the Court gave Defendant the following warning:

> There are rules of evidence. There are legal materials that lawyers have easy access to that help them prepare. And their training and experience is very important in providing effective representation of a person such – like yourself who has been charged with this particular crime of Conspiracy to Defraud the United States by Impeding and Impairing the IRS and the Evasion of Assessment.
> So I think that you would be making a mistake by representing yourself and not having the assistance of an attorney, especially if you can afford one. And it looks like the – your financial situation is not an issue and you're choosing to represent yourself. . . .

(Id. at 28:21–29:7).

After issuing these warnings, the Court permitted Defendant to gather her thoughts and allowed Defendant's counsel to place their reasons for wanting to withdraw on the record. (Id. at 29:15–32:17). The Court, after hearing counsel's reasons for withdrawing, made the following statement:

> And if she wanted to represent herself, before I received you all, I needed to go over all of the core matters, important factors that she needed to consider before she proceeded in representing herself in this court in the criminal charges, felony charges, that she is facing.

(Id. at 32:18–22). The Court then proceeded to ask Defendant the following:

> THE COURT: So Mrs. Steiniger, you understand the nature of the charges against you. You have been told the possible penalties. At least you have been made aware of the charges and you've been told of the possible penalties. And I think I have tried to explain to you the dangers and disadvantages of your self-representation. So let me ask you, is that how you are choosing to proceed is in representing yourself?
>
> MRS. STEINIGER: Without representation, yes.

(Id. at 32:23–33:6). Soon thereafter, the Court further warned Defendant about the perils of self representation:

> THE COURT: And I need to make sure you're aware that you will be–I'll look at you just like I look at the attorneys for any issues or any matters that the Court will need to consider. You can't – or I'm not permitted to give you any deferential treatment because you're representing yourself. Do you understand that?
>
> MRS. STEINIGER: Yes.

(Id. at 36:19–25). Upon receiving Defendant's affirmative response, the Court reiterated that

- 4 -

the trial would begin on December 8th. (Id. at 37:1–2). Before recessing, the Court gave Defendant one final warning:

> THE COURT: Okay. All right. Well, Mrs. Steiniger, you have chose to invoke your Sixth Amendment right to self-representation and it appears that your request is knowingly and intelligently made and it seems unequivocal.
> And so I am going to allow you to do that since we are not in trial or right on the day before trial.
> And you understand that the trial is still proceeding, so I just want to make sure you understand you have a duty to abide by all the procedure and protocol that the lawyers are required to abide by.
> And I think I have tried to explain to you that I think, you know, there's a disadvantage to representing yourself, that you would probably be better served if you were represented by counsel.
> But it seems like you still wish to proceed to represent yourself; is that correct?
> MRS. STEINIGER: Yes.

(Id. at 44:19–45:10.).

On November 16, 2009, the Court held a final pre-trial conference. (Doc. 144 Tr. 11/16/09). At the beginning of that conference, Defendant apologized to the Court for her previous behavior and asked the Court for a continuance of sixty days. (Id. at 3:23–4:5.). In denying Defendant's request, the Court stated:

> I appreciate your apology Ms. Steiniger, but I thought I made it pretty clear at the last hearing that this was set for trial on December 8th, it was going to proceed with trial . . . I asked a number of questions of you to make sure you understood that it was going to trial and that you would then be, as you indicated to the Court, representing yourself, and did you really want that? And you indicated that you did . . . .

(Id. at 4:22–5:5). The Court also informed Defendant that it was not too late for her to retain counsel. (Id. at 5:7–19). After dealing with some outstanding issues, the Court explained its standard rules of trial procedure to the Parties. (Id. at 15:10–17:15, 19:8–20, 27:7–32:23). Specifically, the Court explained voir dire, what could be said in opening and closing statements, what could be asked about on direct and cross examination, and how the Court would handle jury instructions. (Id.). Before concluding, the Court stated that it "highly recommend[ed]" Defendant hire new counsel if financially able to do so. (Id. at 32:5–8).

On December 3, 2009, the Court held a status hearing. (Doc. 145, 12/3/2009 Tr. 3:1–4). At that hearing, Defendant repeatedly indicated that she was unprepared because she

- 5 -

1  was "not an attorney" and was therefore unable to "make a legal determination" about certain
2  issues. (Id. at 7:23–25). In response, the Court stated, "well, you had an attorney. You
3  could have had an attorney. It looks like you still could have an attorney. You've chosen
4  not to have an attorney. You've chosen to represent yourself." (Id. at 8:1–4). In response,
5  Defendant stated that she thought representing herself was the "right thing to do" and that
6  she was "still happy with that decision." (Id. at 8:16–9:14). Defendant proceeded to explain
7  that she felt compelled to discharge her lawyer, not because he acted inappropriately, but
8  because his loyalties were to the court first, to the people second, and to her third. (Id. at
9  11:11–16). The Court responded by stating that Defendant's lawyers were not present to
10 defend themselves and there was nothing in the record indicating that those lawyers had
11 acted inappropriately. (Id. at 10:23–11:5). Near the close of the hearing, the Court once
12 again advised Defendant of the risks of proceeding *pro se*.:

> And you have made a decision – we've talked about this now more than once and several times – that you instead would like to represent yourself. I've warned you of the disadvantage of that and the consequences of that. And still you decide that you want to represent yourself.
> You state here today that you're not lawyers, and so you can't really address some of the issues or you can't answer or that's your explanation as to why maybe your documentation is less than clear.
> I don't know that that's the reason, but you made a decision to represent yourself. We went over that quite clearly. I don't think you had any other questions about that. I warned you the best that I could have what the law requires. And I think I went beyond that in telling you what a mistake I think that is. But you've chosen and it sounds like you're still wanting to represent yourselves. And the trial is next week.

20 (Id. at 36:14–37:5).

21 Finally, on the first day of Defendant's trial, the Court once again reiterated the impact
22 of Defendant's choice to represent herself:

> I warned you that it would be very disadvantageous to you to let go of your counsel and not hire new counsel. I tried to find out why it is that you would let your – your able counsel go. It wasn't a question of finances. You've indicated that's not the problem, that you can't afford counsel, but that you chose to represent yourself.
> I asked Diane Goulder Steiniger: Are you sure? I don't think it's a good idea to proceed without counsel.
> I don't know how many different ways I tried to warn you and tell you that this was a firm trial date, and that you would be disadvantaged. We've had a number of discussions since then as well in the hearings that we have had.
> You still had an option to bring in counsel, and you haven't. Instead,

- 6 -

> you have chosen to represent yourself, and you acknowledged at the last hearing that that is exactly what you want to do is represent yourself in this matter. And I told you that there would be no continuances, that we would be – this was a firm trial date.

(Doc. 179, Tr. 6/17/10 10:18–11:15). Following that warning, Defendant asked that she be given time to find an attorney. (Id. at 15:16–18). The Court responded as follows:

> We . . . had this discussion at the last hearing, just to see, in case, again, one more time, if you truly were going to go to trial without counsel, and you indicated, Mrs. Steiniger, yes, you made a conscious choice to proceed without counsel and that you would represent yourself. There was this discussion about this oath that lawyers would have to take, and that you didn't think that any lawyer, because of the oath that they would have to take, you would want. And – and that that would be unfair to you. I think you couched it in those terms . . .
> And at each of the hearings, you yourself said you were at a disadvantage, and so I said, well, that's your choice. You have – you can get a lawyer. You can still get a lawyer. And you've chosen not to.
> And then today, the day of the trial, when . . . the panel is all here from – from Northern Arizona, you're saying that now you want to proceed in trying to get a lawyer.
> And with all due respect, this seems like this is just tactical on your part to delay these proceedings, and I can't reconcile your request today with the record in this case and all of the discussions that we have previously had.

Id. 16:8–17:5.

### B.   Legal Standard

In felony cases, a defendant's waiver of his right to counsel must be knowing and intelligent. Faretta v. California, 422 U.S. 806, 835 (1975). For a waiver to be knowing and intelligent, a defendant must be "'made aware of (1) the nature of the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation.'" United States v. Hayes, 231 F.3d 1132, 1136 (9th Cir. 2000) (quoting United States v. Hernandez, 203 F.3d 614, 624 (9th Cir. 2000)). "The validity of a Faretta waiver is typically assessed at the time it is entered." McCormick v. Adams, 621 F.3d 970, 976 (9th Cir. 2010). In reviewing the validity of a waiver, the focus is on what the defendant understood at the time of his decision, rather than what the court said or understood. Hayes, 231 F.3d at 1138 ("In determining whether a defendant legitimately waived counsel, a trial judge must focus on the defendant's understanding of the importance of counsel . . . ."). In order to determine what a defendant understood, a reviewing court may "look to the particular facts and

- 7 -

1 circumstances surrounding that case, including the background, experience and conduct of
2 the accused." United States v. Gerritsen, 571 F.3d 1001, 1012 (9th Cir. 2009).

3 "In this circuit, the 'preferred procedure' to ensure the validity of a waiver is for the
4 district court to discuss each of the three elements with the defendant on the record in open
5 court." United States v. Farhad, 190 F.3d 1097, 1099-1100 (9th Cir. 1999). To aide trial
6 judges in explaining the dangers and disadvantages of self-representation, the Ninth Circuit
7 has promulgated a sample "illustrative discussion," which it believes comports with Faretta's
8 requirements:

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. Unlike the prosecutor you will face in this case, you will be exposed to the dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.

Hayes, 231 F.3d at 1138–39. The illustrative discussion is not required to be used verbatim. Id. at 1139.

### C. Discussion

Defendant argues that this Court's failure to adequately appraise her of the core functions of counsel raises a substantial issue of law. Specifically, relying on the "illustrative discussion" in Haney, Defendant argues that the Court erred by not informing her that she "risked exposure to the 'dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.'" 231 F.3d at 1138–39.

As an initial matter, Defendant's focus on what the Court said is misplaced. In

- 8 -

1  reviewing a Faretta waiver, the focus is on what the defendant understood at the time of his
2  decision, rather than what the court said. Hayes, 231 F.3d at 1138 ("In determining whether
3  a defendant legitimately waived counsel, a trial judge must focus on the defendant's
4  understanding of the importance of counsel . . ."). Accordingly, in explaining the dangers
5  and disadvantages of self-representation, including the core functions of counsel, this Court
6  was not required to adhere to any particular script. Gerritsen, 571 F.3d at 1011("[I[t is well
7  established that the district court had no obligation to recite a particular script in order to
8  advise Gerritsen of a lawyer's core functions."); see McCormick, 621 F.3d at 977 ("[W]e
9  have not prescribed a meticulous litany to be employed by a trial court in a colloquy
10 regarding a defendant's request for a Faretta waiver." (internal quotations omitted)); United
11 States v. Erskine, 355 F.3d 1161, 1168 (9th Cir. 2004) ("[W]e have never required district
12 courts to recite a particular script when making their inquiry."). Instead, the Court was only
13 required to provide "some edification of the pitfalls of self-representation," which it most
14 assuredly did. Hayes, 231 F.3d at 1138.

15         With the exception of the portion relied on by Defendant, the Court's discussion with
16 Defendant covered every aspect of Hayes' illustrative discussion. The Court informed
17 Defendant that she would "have a duty to abide by all the procedure and protocol that the
18 lawyers are required to abide by." Hayes 231 F.3d at 1138–39 ("You will have to abide by
19 the same rules in court as lawyers do."). The Court also explained that it would "look at
20 [Defendant] just like I look at the attorneys for any issues or any matters that the Court will
21 need to consider," and not give her "deferential treatment." See id. at 1139 ("Even if you
22 make mistakes, you will be given no special privileges or benefits, and the judge will not
23 help you."). The Court further counseled that, "There are rules of evidence. There are legal
24 materials that lawyers have easy access to that help them prepare. And their training and
25 experience is very important in providing effective representation of a person such – like
26 yourself who has been charged with this particular crime of Conspiracy to Defraud the
27 United States by Impeding and Impairing the IRS and the Evasion of Assessment." See id.
28 ("The government is represented by a trained, skilled prosecutor who is experienced in

1 criminal law and court procedures.").

2 These warnings were not overly broad or non-specific. Id. at 1137–38 ("[S]uggesting
3 that there are consequences in the abstract is not enough; there must be some instruction or
4 description, however minimal, of the specific dangers and disadvantages of proceeding *pro*
5 *se*."). To the contrary, the Court identified specific pitfalls of proceeding *pro se*, including
6 some which are core duties of counsel, such as complying with all rules and procedures,
7 preparing for trial, and navigating rules of evidence. See United States v. Kimmel, 672 F.2d
8 720, 721 (9th Cir. 1982) (noting that a defendant should "be made to understand his
9 "constitutional right to have [a] lawyer perform certain core functions," and "appreciate[] the
10 possible consequences of mishandling these core functions and the lawyer's superior ability
11 to handle them."). Therefore, "[t]his is not a case in which the district court simply
12 suggested that there might be abstract consequences resulting from the lack of representation
13 by counsel without describing those consequences with specificity." Erskine, 355 F.3d at
14 1161.

15 In addition to providing Defendant with certain specific warnings about the dangers
16 of waiver, the Court also made clear to Defendant that proceeding *pro se* was a bad idea and
17 placed her "at a distinct disadvantage for purposes of any court proceeding or hearing and
18 in representing [herself] in this case, especially at trial." In fact, on two occasions during the
19 waiver hearing, the Court expressly counseled the defendant against proceeding *pro se*,
20 telling Defendant that she would be "making a mistake by representing [her]self" and that
21 "there's disadvantages to representing yourself, that you would probably be better served if
22 you were represented by counsel." See Lopez v. Thompson, 202 F.3d 1118, 1119 (9th Cir.
23 2000) (en banc) (emphasizing that the trial court "repeatedly told Lopez that he faced
24 significant dangers if he chose to proceed without the assistance of counsel."). While the
25 Court did not list each specific trial task Defendant would have to undertake if she elected
26 to proceed *pro se*, a court is not required to "list, bullet-style, the various disadvantages of
27 proceeding without counsel, [where] the [C]ourt's warnings nevertheless communicated
28 powerfully to [Defendant] the disadvantages of proceeding *pro se*, which is all that Faretta

- 10 -

requires." Id.  Additionally, at the November 16, 2009 final pretrial conference, the Court explained many of the duties that, as counsel, Defendant would be expected preform, including voir dire, opening and closing statements, direct and cross examination, and jury instructions.  Hearing about these responsibilities in no way dissuaded Defendant's determination to self represent, even though the Court once against suggested to Defendant that it would be in her best interest, and it was not too late, to obtain counsel.

In light of the foregoing, the Court cannot find that Defendant has raised a substantial issue of law as to the waiver of her right to counsel.  To the contrary, Defendant appears to have been well aware of the dangers of proceeding *pro se*, but simply chose to ignore them.[1] See Faretta, 422 U.S. at 835 (stating that the record should establish that the defendant "knows what he is doing and his choice is made with eyes open.").  Accordingly, Defendant's motion is denied as to the issue of waiver.

### 2. Continuance

Defendant also argues that the Court's refusal to grant her November 16, 2009 request for a 60-day continuance raises a substantial issue of law.

#### A. Factual Background

After waiving her right to counsel, Defendant made two separate requests for a continuance.  The first request occurred on November 16, 2009, at the final pre-trial conference. (Doc. 143, Tr. 11/16/2009 3:23–4:5). Defendant indicated that, because she was not a lawyer and did not know what she was doing, she felt as though she needed "more time to prepare for trial and potentially seek other counsel."  (Id. at 4:2–5).  Accordingly, Defendant requested a sixty-day continuance. (Id. at 4:4–5).  The Government opposed the continuance, suggesting that the Court had indicated on numerous occasions that the trial date was firmly set. (Id. at 4:7–15).  In response, Defendant indicated that the entire process

---

[1]The Court's conclusion in this respect is supported by Defendant's conduct at subsequent hearings, where this Court, on multiple occasions, re-visited the Faretta issue and reiterated that proceeding *pro se* was disadvantageous and that Defendant would be wise to retain counsel.

- 11 -

had become "extremely stressful and overwhelming" and that she was unable to "understand a lot of what was happening." (Id. at 4:16–21). Notwithstanding Defendant's statements, the Court denied the motion for a continuance. (Id. at 4:22–6:6). In so doing, the Court noted that Defendant had been apprised on numerous occasions of the risks of proceeding without counsel and had nonetheless decided to proceed accordingly. (Id. at 4:22–5:6). Furthermore, the Court emphasized that Defendant did not appear to be taking the proceedings as seriously as was warranted given the gravity of the impending trial. (Id. at 6:20–24). Finally, the Court indicated that Defendant's motion appeared to be motivated, at least in part, by a desire to delay the trial and avoid the consequences of Defendant's actions. (Id. at 5:25–6:4).

Defendant's second request to continue the trial occurred on December 8, 2009, the first day of the jury trial. (Doc. 179, Tr. 12/8/2009, 8:16–19). Specifically, Defendant requested a continuance in order that (1) she may be able to exhaust her administrative remedies, and (2) she be allowed to find new counsel. (Id. 8:16–19, 15:16–16:7). In response, the Court reiterated that it had, from the outset, informed Defendant that there would be no continuances and that the trial date had been firmly set for December 8, 2009. (Id. at 14:2–7). In response to Defendant's first request, the Court stated that she had "ample opportunity" to exhaust the administrative remedies and, "for whatever reason, they haven't been resolved." (Id.). The Court also noted that there were a number of "potential jurors downstairs who have come from Northern Arizona" to participate in the trial. (Id. at 14:9–11). With regard to the second reason Defendant cited for a continuance—finding new counsel—the Court again reiterated that Defendant had been made aware on numerous occasions that she would be at a disadvantage by proceeding without counsel. (Id. at 16:8–22). Furthermore, the Court suggested that Defendant's request seemed like a tactical decision "to delay these proceedings." (Id. at 17:2–5). Accordingly, the Court denied Defendant's motion to continue the trial.

### B. Legal Standard

A district court need not find "a compelling reason before granting or denying a

1  continuance," and the decision is reviewed for abuse of discretion. <u>United States v. Garrett</u>,
2  179 F.3d 1143, 1145–46 (9th Cir. 1999). When the "right[] to counsel come[s] into conflict
3  with the trial judge's discretionary power to deny continuances, courts apply a balancing of
4  several factors to determine if the trial judge's action was fair and reasonable." <u>U.S. v.</u>
5  <u>Leavitt</u>, 608 F.2d 1290, 1293 (9th Cir. 1979); <u>see</u> <u>U.S. v. Studley</u>, 783 F.2d 934, 938 (9th Cir.
6  1986) (citing Leavitt for this proposition). Among the factors that will be considered are: (1)
7  "whether the continuance would inconvenience witnesses, the court, counsel, or the parties;
8  (2) whether other continuances have been granted; (3) whether legitimate reasons exist for
9  the delay; (4) whether the delay is defendants fault; (5) and whether a denial would prejudice
10 the defendant." <u>Studely</u>, 783 F.2d at 938 (citing <u>Leavitt</u>, 608 F.2d at 1293).

11       **C.**     **Discussion**

12     Defendant's argument is focused exclusively on the request for a continuance
13 Defendant made at the November 16, 2009 final pre-trial conference. Defendant argues that
14 the Court abused its discretion in denying Defendant's continuance request, creating a
15 substantial issue. Specifically, Defendant argues that the Court's refusal to grant the
16 continuance infringed Defendant's right to counsel because the right to adequately prepare
17 for trial is implicit in the right to counsel. (Doc. 240, p.21 (citing <u>Avery v. Alabama</u>, 308
18 U.S. 444, 446 (1940) for the proposition that an inadequate time to prepare a defense
19 infringes the right to counsel)). This Court disagrees.

20     At the hearing, Defendant presented no legitimate reasons for her continuance request.
21 Defendant's assertions that the trial process had become "extremely stressful and
22 overwhelming" and that she was unable to "understand a lot of what was happening," were
23 not persuasive. At the October 28, 2009 waiver hearing, the Court warned Defendant about
24 the dangers of proceeding *pro se*, including that she lacked the requisite training and
25 experience, and expressly informed her that no further continuances would be granted.
26 Furthermore, the Court made clear that there remained time for Defendant to obtain new
27 counsel, and explained that the Court might consider a continuance if Defendant elected to
28 obtain a new attorney and that attorney could show good cause. Defendant also argued that

1 in light of the complexity of the case and the volume of materials disclosed by the
2 Government, four weeks would not allow her to adequately prepare a defense. The Court,
3 however, rejected this argument, noting that Defendant had exhibited a lack of seriousness
4 concerning the proceedings and had acted in an obstructionist manner, and expressed its
5 concern "that what is happening here is . . . just purely for purposes of delaying the trial and
6 to avoid having to face the consequences now of the actions." In other words, the Court
7 doubted that Defendant would make an effective use of the additional time. Relatedly, the
8 Court also rejects Defendant's current suggestion that the six weeks to prepare for trial was
9 so insufficient as to per se prejudice Defendant. While more time might have been optimal,
10 six weeks was not an unreasonable amount of time to prepare a defense, and Defendant
11 offered no specific reasons concerning her inability to prepare in six weeks. Finally, the
12 Court notes that multiple other continuances had already been granted, and the case had been
13 pending for close to a year.

14 In light of the factors which the appellate court will consider, this Court does not find
15 Defendant has presented a substantial issue of law concerning the issue of the denied
16 continuance and must deny her motion.

17 **III.    EMERGENCY MOTION FOR AUTOMATIC STAY PENDING APPEAL**

18 Defendant has requested that this Court grant an automatic stay pending appeal, citing
19 to 9th Circuit Rule 9-1-2(e). This Court cannot grant Defendant relief pursuant to a Ninth
20 Circuit rule and must therefore deny Defendant's motion as this Court lacks jurisdiction.
21 / / /

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendant's Motion for Bail Pending Appeal to the Ninth Circuit. (Doc. 240).

**IT IS FURTHER ORDERED** denying Defendant's Emergency Motion for Automatic Stay of Surrender Date Pursuant to 9th Circuit Rule 9-1-2(e). (Doc. 241).

DATED this 14th day of April, 2011.

_____
Mary H. Murguia
United States District Judge